Sean R. Kelly (skelly@saiber.com)
John F. Finnegan III (jfinnegan@saiber.com)
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2266
(973) 622-3333
*Attorneys for Defendants*
*Barbara E. Bender, Nenad Gucunski (improperly pleaded as "Nenand Gucunski"),*
*Gina Cullari, Robert L. Barchi, and The Board of Governors/ The Trustees of Rutgers,*
*The State University of New Jersey*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| R.K.,<br><br>Plaintiff,<br><br>v.<br><br>BARBARA E. BENDER, HUSAM NAJM, KAAN OZBAY, NENAND GUCUNSKI, GINA CULLARI, RICHARD BIRD, JEREMY J. KUKOR, ROBERT L. BARCHI, and THE BOARD OF GOVERNORS/THE TRUSTEES OF RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY,<br><br>Defendants. | Civil Action No. _____<br><br>**NOTICE OF REMOVAL**<br><br>*Document Electronically Filed*<br><br>[On Removal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. ESX-L-00564-17] |

**TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

Defendants Barbara E. Bender ("Dean Bender"), Nenad Gucunski ("Gucunski") (improperly named herein as "Nenand Gucunski"), Gina Cullari ("Cullari"), Robert L. Barchi ("President Barchi"), and The Board of Governors/The Trustees of Rutgers, The State University of New Jersey ("Rutgers") (collectively, the "Served Defendants"), by and through their attorneys, Saiber LLC, together file this Notice of Removal of the above-titled action from the Superior Court of New Jersey, Law Division, Essex County, and respectfully state the following as the basis for removal to this Court:

## I.      INTRODUCTION

1.      On or about January 23, 2017, Plaintiff commenced this action by filing *pro se* a ten-count Complaint entitled R.K. v. Barbara E. Bender, Husam Najm, Kaan Ozbay, Nenand Gucunski, Gina Cullari, Richard Bird, Jeremy K. Kukor, Robert L. Barchi, and The Board of Governors/The Trustees of Rutgers, The State University of New Jersey, in the Superior Court of New Jersey, Law Division, Essex County, Docket No. ESX-L-00564-17.

2.      Defendants Dean Bender and Gucunski were each first served with an undated Summons and an undated Complaint on January 30, 2017.

3.      Defendants Cullari, President Barchi and Rutgers were each first served with an undated Summons and undated Complaint on January 31, 2017.  Copies of the Summons and Complaint that Rutgers received on January 31, 2017 are attached hereto as Exhibit A.

4.      None of the Served Defendants have filed any responsive pleading to the Summons and Complaint, nor have they received any other pleadings or court orders from Plaintiff or any of the other individually named defendants in connection with this case.  Thus, the Summons and Complaint constitute, pursuant to 28 U.S.C. § 1446(a), "all process, pleadings, and orders served upon" the Served Defendants in this action.

5.      All of the Served Defendants consent to removal and join in this application.

6.      Upon information and belief, neither defendants Husam Najm, Kaan Ozbay, Richard Bird, nor Jerome J. Kukor (improperly pleaded as "Jeremy J. Kukor") have been personally served with a Summons and Complaint.

## II.     BASIS FOR FEDERAL COURT JURISDICTION:  FEDERAL QUESTION

7.      The Complaint generally alleges that defendants "negligently or recklessly fail[ed] to provide Plaintiff the means to complete his Ph.D. study at Rutgers" (Ex. A, Compl. ¶ 16; see id.

¶¶ 22, 33) and "wrongfully terminated … Plaintiff's Ph.D. status at the University" (Ex. A, Compl. ¶ 46; see id. ¶¶ 18, 44, 47–49).

8.      The Complaint alleges, *inter alia,* that Rutgers is liable for "United States Constitutional Violation of the Fifth and Fourteenth Amendments of Procedural Due Process under 42 U.S.C. § 1983" for failure to provide a hearing in connection with Plaintiff's status as a graduate student.  (Ex. A, Compl., Tenth Count).

9.      Accordingly, removal of this action is appropriate pursuant to 28 U.S.C. §§ 1331 and 1441(a), on the basis of this Court's original jurisdiction of "all civil actions arising under the Constitution … of the United States."  28 U.S.C. § 1331.

10.     Plaintiff also alleges state law claims as follows: (i) breach of contract against Rutgers only (Ex. A, Compl., First Count ¶¶ 69–77); (ii) breach of the implied covenant of good faith and fair dealing against Rutgers only (id. Second Count ¶¶ 78–91); (iii) interference with contract against the individually named defendants only (id. Third Count ¶¶ 92–101); (iv) fraud against Rutgers only (id. Fourth Count ¶¶ 102–117); (v) intentional misrepresentation against Rutgers only (id. Fifth Count ¶¶ 118–130); (vi) negligence against all defendants (id. Sixth Count ¶¶ 131–137); (vii) violations of New Jersey anti-bullying laws against all defendants (id. Seventh Count ¶¶ 138–142); (viii) interference with a prospective economic advantage against all defendants (id. Eighth Count ¶¶ 143–149); and (ix) violations of the New Jersey State Constitution against Rutgers only (id. Ninth Count ¶¶ 150–158).

11.     As a result of the common set of operative facts upon which all of Plaintiff's claims are based, this Court has, and should exercise, supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state law claims.

## III.   THE SERVED DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

12.     This Notice of Removal is being timely filed pursuant to 28 U.S.C. § 1446(b) because it is filed within thirty (30) days of January 30, 2017, the earliest date of proper service of the Complaint on one of the Served Defendants.

13.     Pursuant to 28 U.S.C. § 1441(a), venue is proper in the United States District Court for the District of New Jersey because it is the "district and division embracing the place where such action is pending."

14.     Pursuant to 28 U.S.C. § 1446(d), the Served Defendants have filed a Notice of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Law Division, Essex County, and caused to be served a copy of same on Plaintiff and the Honorable Grace L. Spencer, J.S.C., to whom the state court action is assigned.  A copy of the Notice of Notice of Removal (without Exhibit 1 thereto) is attached hereto as Exhibit B.

15.     No previous application has been made for the relief requested herein.

16.     For the foregoing reasons, this action has been properly removed and, pursuant to 28 U.S.C. § 1446(d), the filing of the Notice of Removal in the United States District Court for the District of New Jersey, together with the filing of a copy of the Notice of Removal with the Clerk of the Superior Court of New Jersey, Essex County, effects the removal of this action, and the Superior Court of New Jersey may proceed no further unless and until the action is remanded.

17.     If any question arises as to the propriety of the removal of this action, the Served Defendants respectfully request the opportunity to brief any disputed issues and to present oral argument in support of their position that this case is properly removable and removed.

18.     By filing this Notice of Removal, the Served Defendants neither waive nor relinquish their rights to assert any procedural or substantive defense or affirmative matter.

**WHEREFORE**, the Served Defendants hereby seek to remove the state court action from the Superior Court of New Jersey, Law Division, Essex County, Docket No ESX-L-00564-17, to this Court pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446.

Respectfully Submitted,

**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2266
Tel.:   (973) 622-3333
Fax:    (973) 622-3349

By:        */s/ Sean R. Kelly*
            SEAN R. KELLY

Dated: February 24, 2017

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

On behalf of defendants Barbara E. Bender, Nenad Gucunski (improperly pleaded as "Nenand Gucunski"), Gina Cullari, Robert L. Barchi, and The Board of Governors/The Trustees of Rutgers, The State University of New Jersey (collectively, the "Served Defendants"), I certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, other than the matter in the Superior Court of New Jersey, Law Division, Essex County, Docket No. ESX-L-00564-17 from which the Served Defendants seek removal, or of any pending arbitration or administrative proceeding.

**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2266
Tel.:   (973) 622-3333
Fax:    (973) 622-3349
*Attorneys for Defendants*
*Barbara E. Bender, Nenad Gucunski (improperly pleaded as "Nenand Gucunski"), Gina Cullari, Robert L. Barchi, and The Board of Governors/ The Trustees of Rutgers, The State University of New Jersey*

By:      */s/ Sean R. Kelly*
         SEAN R. KELLY

Dated:  February 24, 2017

# Exhibit A

**SUMMONS**

Attorney(s)

Office Address   R.K., PRO SE
                 626 RIVERSIDE DRIVE, #10C

Town, State, Zip Code  NEW YORK, NY 10031

Telephone Number  (212) 281-8580

Attorney(s) for Plaintiff

**Superior Court of
New Jersey**

Essex                    ☑ COUNTY

LAW                        DIVISION

Docket No: _____

R.K.

       Plaintiff(s)

Vs.
BARBARA E BENDER, ET AL

**CIVIL ACTION
SUMMONS**

       Defendant(s)

From The State of New Jersey To The Defendant(s) Named Above:

      The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

      If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

      If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

                                 _____
                                 Clerk of the Superior Court

DATED: _____                        THE BOARD OF
                                               TRUSTEES OF
Name of Defendant to Be Served:  C/O GREG BROWN, CHAIRMAN THE BOARD OF GOVERNORS/ THE RUTGERS

Address of Defendant to Be Served:  7 COLLEGE AVE, WINANTS HALL, RM112, NEW BRUNSWICK NJ

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

R.K., Pro se

626 Riverside Drive, #10C
New York, New York 10031
(212) 281-8580

R.K., Pro se
-------------------------------------------------------X
R.K.,                                                                    SUPERIOR COURT OF NEW JERSEY
                                                                         LAW DIVISION: ESSEX COUNTY
                                        Plaintiff,

vs.

BARBARA E. BENDER, HUSAM NAJM,                                           Docket No.:
KAAN OZBAY, NENAND GUCUNSKI,                                             Civil Action
GINA CULLARI, RICHARD BIRD,
JEREMY J. KUKOR, ROBERT L. BARCHI, and
THE BOARD OF GOVERNORS/
THE TRUSTEES OF RUTGERS, THE STATE
UNIVERSITY OF NEW JERSEY,

                                        Defendants.

-------------------------------------------------------X

-----------------------------------------------------------------------------------------------

## COMPLAINT AND JURY DEMAND

-----------------------------------------------------------------------------------------------

Professor R.K.,M.S, M.S.,M.S.,M.S.,M.B.A.,
Plaintiff, Pro se
626 Riverside Dr. #10 C
New York, NY 10031
(212) 281-8580

R.K., Pro se

626 Riverside Drive, #10C
New York, New York 10031
(212) 281-8580

------------------------------------------------------------X
R.K.,

                         Plaintiff,

v.

BARBARA E. BENDER, HUSAM NAJM,
KAAN OZBAY, NENAND GUCUNSKI,
GINA CULLARI, RICHARD BIRD,
JEREMY J. KUKOR, ROBERT L. BARCHI, and
THE BOARD OF GOVERNORS/
THE TRUSTEES OF RUTGERS, THE STATE
UNIVERSITY OF NEW JERSEY,

                         Defendants.
------------------------------------------------------------X

·SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: ESSEX COUNTY

Docket No.:
Civil Action

**COMPLAINT AND
JURY DEMAND**

Plaintiff ("R.K."), Pro se alleges, by way of complains of Defendants, upon information and belief, as follow:

**THE PARTIES**

1.   R.K., Pro se Plaintiff, is a resident of the State of New York and, at relevant times, had maintained an address in Ridgewood, New Jersey 07450.

2.   Defendant, Barbara E. Bender, is an employee of Rutgers, the State University of New Jersey (hereinafter "Rutgers" or "University" or "Rutgers University"), and a non-academic employee of the Rutgers Graduate School in New Brunswick, New Jersey. Defendant Bender is charged with academic support and graduate students services.

3.   Defendant, Husam Najm is the Graduate Director of the Department of Civil and Environmental Engineering ("Department"), and is an employee of Rutgers, who

1

holds the position of administrator of Ph.D. enrollment. As Director of Graduate Studies, he is charged with supervision of the Department of Civil Engineering Ph.D. program enrollment.

4. Defendant, Kaan Ozbay, is a former employee of Rutgers, who held the position of a faculty member in the Transportation Engineering area of the Department of Civil and Environmental Engineering at Rutgers until August 2014, and who served as advisor to Plaintiff upon Plaintiff's admission to Rutgers on or about January 16, 2009 into the Ph.D. program in Transportation Engineering after Plaintiff had been a matriculated Ph.D. candidate in the Transportation Engineering program of another university. Defendant Ozbay was the supervising advisor of Plaintiff at all times relevant to this lawsuit. As Plaintiff's advisor in the Transportation Engineering program, Defendant Ozbay was charged with immediate supervision of Plaintiff's graduate Ph.D. program at Rutgers with contractual responsibilities to aid Plaintiff in completing his Ph.D. degree in Transportation Engineering at Rutgers.

5. Defendant, Nenad Gucunski of the Department of Civil and Environmental Engineering, is an employee of Rutgers, who holds the position of Chair of Department, and has held such position since Plaintiff's admittance into the Department. Meanwhile, during Gucunski's tenure, more than four faculty abruptly left the Department for other universities, including the most recent departing faculty member, Assistant Professor Eric Gonzales who left Rutgers for the University of Massachusetts, Amherst in 2014.

6. Defendant Gina Cullari is an employee of Rutgers, and is in charge of administration of the Graduate Program, including the Department's Ph.D. program.

2

7.    Defendant Richard Bird is the Graduate Registrar, and is charged with keeping accurate and true registration of graduate students' records at Rutgers.

8.    Defendant Jeremy J. Kukor, is an employee of Rutgers, who holds the position of Dean of the Graduate School in New Brunswick, and is charged with supervision of the Graduate School's academic and business affairs.

9.    Defendant, Dr. Robert L. Barchi, is an employee of Rutgers, who holds the position of President of the University, and has held such position since September 2012. As President, Defendant Barchi is charged with supervision of the University's business and affairs.

10.    Defendant, Rutgers University is a public research university, and receives substantial public and federal funding for its degree programs.  Rutgers is an institution for higher education conducting its business operations in the State of New Jersey.  The University's three campuses are located in Newark, New Brunswick, and Camden, all in the State of New Jersey.

11.    Defendant the Board of Governors/Trustees of Rutgers, governs Rutgers by means of its principal agent, Greg Brown, as the Chairman of the Board.

12. Defendants are the agents, servants and/or employees of the aforementioned, who acted for all pertinent purposes within the scope and course of employment and/or otherwise contributed to the wrongful and illegal conduct complained of in this Complaint.

3

## FACTS COMMON TO ALL COUNTS

13.  Plaintiff is holder of multiple M.S. degrees, and was a matriculated Ph.D. degree candidate in Rutgers' Transportation Engineering Program, who had transferred from another university's matriculated Ph.D. program into Rutgers' Ph.D. program in Transportation Engineering with advance standing of 24 transfer credits in or about January 16, 2009, based on his prior multiple M.S. degrees, plus his matriculated Ph.D. status outside Rutgers.

14.  Defendants accepted Plaintiff as a matriculated Ph.D. status from another university's in the transportation engineering program into Rutgers' Transportation Engineering program with advance transfer credits standing, with the knowledge that Plaintiff would reply on Defendants' representation that Plaintiff would complete his Ph.D. program at Rutgers.

15. Plaintiff acceptance into the program in Transportation Engineering explicitly stated in the Certificate of Admission of Plaintiff, dated January 16, 2009, that:

> **Mr. Resat Keles**, 626 Riverside Dr, Apartment 10C, New York, NY 10031
> **Rutgers University ID (RUID):** xxx xxx 4954
> **Residency for tuition:** out of state
> **Degree Admitted For:** PHD
> **Program Admitted To:** Civil and Environmental Engineering
> **Semester of Admission:** Spring 2009
> **Special Conditions (If Applicable):** You must provide official undergraduate and graduate transcripts showing your degree awarded
> **Advisor:** Kaan Ozbay

16.  Defendants breached their promise to Plaintiff by negligently or recklessly failing to provide Plaintiff the means to complete his Ph.D. study at Rutgers.

4

17. At the time of Plaintiff's admission as an advanced matriculated Ph.D. candidate the offer of acceptance was dated January 16, 2009.

18. Plaintiff enrolled as a Ph.D. candidate as of January 16, 2009, and continuously registered every semester through the date that his registration was blocked by Defendant Bender, on or about April 20, 2015 at 1:40 PM.  Because Defendant Bender terminated Plaintiff from Rutgers on or about April 20, 2015, the Plaintiff was not able to register for classes for Fall 2015 from thereafter until the present.

19.  Thereafter, Plaintiff secured another Ph.D. research position in the Department of Mechanical and Aerospace Engineering ("MAE"), via a group leader headed by Professor Stephen Tse.  After the approval, Professor Hae Chang Gea, Graduate Program director of MAE, advised Plaintiff to complete a transfer application from one graduate program to another (after completing a Masters Degree from Rutgers). Plaintiff completed the transfer application to MAE for Ph.D. program in MAE that was processed by Ms. Cynthia Cartegna, Administrative Assistant in the MAE Department, and was forwarded to the Graduate School to be processed, where Defendant Bender's office is located.

20.  Thereafter, Plaintiff received a confirmation email dated Friday, July 17, 2015 at 12:24 PM that stated that:

> " ...Your form (Transfer to MAE) was sent to the graduate school,
> it will take a few days to update..."

Plaintiff's transfer to the MAE Department as a Ph.D. status was acknowledged by an email to Ms. Cynthia Cartegna dated Friday, June 10, 2015 at 1:45 PM.

5

21. Plaintiff was advised by Professor Stephen Tse on Monday, July 13, 2015 at 7:
43 PM that:

> "Cindy is processing your transfer to MAE paperwork. You can
> register for the course before the paperwork is complete."

Thereafter, Plaintiff attempted to register, however, Plaintiff discovered that his registration

records were blocked by Defendant Bender, thereafter, and Plaintiff was unable to register

for a graduate course as suggested by Professor Tse.

22. Defendant Bender once again interfered with Plaintiff's transfer to the MAE,

by communicating with Jerry Shan, the new Graduate Director, as evidenced by his email

dated Friday, July 31, 2015 at 2:50 PM that:

> " ...Based on your academic record and lack of funding of your
> Ph.D. I am recommending against your transfer to the graduate
> program in MAE."

Therefore, Defendant Bender once again unlawfully conspired against Plaintiff, and

Defendants directly interfered with Plaintiff's ability to obtain his Ph.D. by means of

unlawful conduct, misrepresentations, and conspiracy acts.

23. Plaintiff replied to Jerry Shan, new graduate director of the MAE, and

outlined his academic background and publication records as found suitable by Professor Tse

to undertake research toward his Ph.D. in the new Department MAE by means of an email

dated Saturday, August 1, 2015 at 7:17 AM to the new graduate director of the MAE stating

that "you are given wrong information from Graduate School with intent to deceive you."

24. Additional information was provided to Jerry Shan for accuracy and review of

the academic file of Plaintiff, which was provided directly to Jerry Shan from Professor Tse.

However, Jerry Shan failed to reply to Plaintiff, and further emails from Plaintiff were

6

ignored, and Plaintiff's academic records at Rutgers were not reviewed.

25.   Plaintiff's transfer to a new Department of Mechanical and Aerospace Engineering ("MAE") for a Ph.D., after approval by his new advisor Professor Stephen Tse and Professor Hae Chang Gea, the graduate program director of the MAE Department, and after an application was submitted by the MAE Department to the Graduate School, was also aborted.

26.   Plaintiff has been the most qualified person for the position due to his impeccable character and academic credentials including an outstanding career in engineering as demonstrated by his academic records, including multiple M.S. degrees with outstanding academic records, and scientific publications internationally and nationally.   Plaintiff's prior academic records and Rutgers' records are truly outstanding and excellent at all of the universities that he has attended.

27.   Plaintiff completed all of his M.S. degree course requirements for an October 2013 graduation, but he was nevertheless required to take more courses in the transportation engineering area. Plaintiff's graduation was thereby delayed until January 2014. Once again, Plaintiff was asked to take additional courses in the Spring 2014 semester, which delayed his graduation until May 2014. Plaintiff paid tuition fees by his Federal Loan with interest running on the loan. Thereby Plaintiff has incurred additional time and money spent in order to comply with the requirements for additional courses imposed by defendants. However, Plaintiff does not need to earn another redundant M.S. degree because Plaintiff already holds three separate M.S. degree with outstanding records from his time before enrolling at Rutgers.

7

28. During Plaintiff's academic studies, after completion of his M.S., Plaintiff was required to earn another redundant M.S. at Rutgers after substantial tuition paid by Plaintiff through his Federal Student loan and, thereafter Plaintiff has been subjected to harassment and intimidation by Defendants Bender and Najm in violation of New Jersey's anti-bullying laws.

29.     Despite the fact that Plaintiff did complete all of his M.S. degree course requirements, passed an oral defense examination on his dissertation before three members of a Rutgers Committee, and paid the prescribed tuition fees, Plaintiff since May 2014 until now has not received his M.S. degree from Rutgers. When Plaintiff requested his M.S. diploma Plaintiff was informed on May 23, 2016 that:

"at this time your diploma is on hold …(emphasis added)."

30.  Following the aforementioned, pursuant to its obligations established under New Jersey's Anti Bullying laws including, but not limited to, New Jersey's Anti-Bullying Bill of Rights, Defendants Bender and Najm continued their verbal assault, harassment, intimidation, bullying, defamation and harassment against Plaintiff in violation of the law of the State of New Jersey, and this has continued since August 20, 2014.

31. After Plaintiff graduated from Rutgers with an M.S. degree in May 2014, Plaintiff discovered around August 20, 2014 that Defendants intentionally and knowingly changed his status from Ph.D. status to M.S. terminal degree status by fraudulent acts of Defendants. This was a fraud by Defendants in altering Rutgers' own official records with intent to harm Plaintiff after completion of the M.S. degree in May 2014.   Thereby Defendants violated state and federal law, and University policy requiring the maintenance of

8

accurate and true records of Plaintiff's academic status, Defendants falsified the Plaintiff's Rutgers' official records with intent to permanently harm him.

32. Plaintiff has protested this action by Defendants since August 14, 2014 through October 23, 2015 without any reply from Defendants, and in vain.

33. Defendants further blocked Plaintiff for further registration with his Ph.D. program since April 20, 2015 with intent to harm Plaintiff.

34. Defendants reported to the National Student Clearinghouse, reporting on Nelnet, a Federal student securer, on October 10, 2015 that:

"…(student) withdrew from school on October 10, 2015."

This was a shocking falsehood with intent to harm Plaintiff.

35. Defendants further reported to National Student Clearinghouse advising to Navient, a Federal student securer, on May 11, 2015 that:

"…(student) withdrew from school on May 12, 2015"

This was an additional and further shocking misrepresentation and falsehood with intent to harm Plaintiff. Moreover, Defendants' misconduct and lies were at all times readily available for review, but Defendants Barchi, Kukor, and all others caused the University Custodian of Records to deny Plaintiff's request to review his records pursuant to the Open Public Records Act ("OPRA"). Plaintiff made an OPRA request on June 6, 2016, and the OPRA request was denied unlawfully on June 16, 2016 by the University Custodian of Records via Daniel E. Faltas, Esq. Despite the fact that Plaintiff was entitled to review his records under the Family Educational Rights and Privacy Act ("FERPA" (20 U.S.C. § 1232g;34 CFR Part 99), which is a Federal law that protects the privacy of students' educational records, and gives the students the right to review the educational records, make

9

copies, and challenge the educational records.

36.  Thereafter, Rutgers denied Plaintiff his records under OPRA and FERPA.

37.  Despite their obligations under New Jersey law, neither the President of the University, nor any other University representative took any steps to assure that the rights of the Plaintiff, a Ph.D. candidate who holds two advanced degrees of M.S. and M.B.A., along with four professional certificates in transportation and leadership areas from Rutgers, and is a member of the Rutgers community in good standing both morally and academically, was protected from verbal assault, harassment, intimidation, bullying, defamation and other unlawful conduct employed by Defendants Bender and Najm.

38.  On several occasions during the course of his studies, Plaintiff experienced the aforementioned assaultive, abusive and other unlawful conduct by Defendants Bender, Najm, and Bird.

39.  Defendant Bender and Jerry Shan, a new graduate director of the MAE Department "conspired and based on false pretense" against Plaintiff without review of his academic files, in that they denied Plaintiff's application to transfer to the MAE Department by means of wrongful acts of Defendant Bender.

40.  Shortly, thereafter, in August 14, 2014, Plaintiff wrote Defendants Barchi and Kukor that he had completed his M.S. at the University, and its representatives were again given notice in writing regarding Defendant Najm's unlawful conduct towards Plaintiff. While, Defendant Kukor replied to Plaintiff's email on August 20, 2014 that:

> "...Dean Waterman is fully aware of the situation and has been working with your Graduate Program Director Dr. Husam Najm to resolve the matters. My understanding from Dean Waterman is that you are admitted to the Civil and Environmental Engineering PhD

10

program once a Ph.D. advisor has been found…(emphasis added)…"

41.  Upon information and belief, neither the University nor its representatives conducted any investigation into Plaintiff's complaints of Defendants Bender and Najm's unlawful conduct. Instead, they chose to simply not do anything.

42.  Shockingly, all of the documentary evidence provided to the University and its representatives from August 20, 2014 until April 20, 2015, had been in Defendants' throughout this period.

43.  Moreover, Defendants Barchi and Kukor were properly notified as late as October 15, 2015 about Bender, Najm, and Bird's misconduct, which was at all times readily available for review by Defendant Barchi. Additionally, other University officials, specifically Leslie Fehrenback, Secretary of the University, the Governing Boards of the University and The Board of Trustees, Kenneth Swalagin, Executive Secretary of the University, Ken Iuso, Registrar, and Dean Jeremy Kukor had documentary evidence of the complained of wrongful acts publicly available to them, and they were properly notified by Plaintiff of his complaint against Bender, Najm, and Bird, but to no avail.

44.  The reason offered for Plaintiff's termination from the Ph.D. program was demonstrably pretextual as Plaintiff's contract had previously been renewed by the University and its representatives. Rather, the termination was the direct result of following Defendant Kukor's reply to Plaintiff on August 20, 2014 about Plaintiff's treatment. Plaintiff requested from Defendants Barchi, Kukor, Najm, and Gucunski, to restore Plaintiff's legal Ph.D. status however, instead Defendant Najm continued his unlawful harassing and intimidating conduct against Plaintiff until April 2015, contrary to Rutgers' policy against

11

verbal assault, harassment, intimidation, bullying, and defamation, and in violation of the terms of the State of New Jersey's Anti-Bullying laws.

45. It was not until April 20, 2015 that Plaintiff's status was directed to proceed to the Ph.D.-M.S. program upon completion of his M.S. degree as following Defendant Cullani's directions. Furthermore, Defendant Cullani and Ozbay conspired against Plaintiff to downgrade Plaintiff's Ph.D. status to an M.S. terminal degree, without any notice to or knowledge of Plaintiff, while both of these Defendants acted in concert to intentionally harm Plaintiff in violation of the law. Besides, Defendants were aware that Plaintiff was already a holder of multiple M.S. level degrees from other Universities, and did not need to pay tuition and complete another M.S. from Rutgers. Plaintiff was only aiming to complete his Ph.D. degree at Rutgers University, which Defendants deprived Plaintiff of his right to complete after he had been Ph.D. admitted to the Transportation Engineering Ph.D. program in January 2009, and thereafter, to the MAE Department's Ph.D. program as approved by the MAE Graduate Director Professor Gea, and Plaintiff's application was forwarded to the Graduate School. That application was aborted by the unlawful action of Defendants.

46. Plaintiff's Ph.D. status at the University was then wrongfully terminated as of April 20, 2015 by the wrongful acts of the Defendants.

47. Plaintiff's Ph.D. registration with the University has been blocked by Defendant Bender on Monday, April 20, 2015 at 1:40 PM under the false pretense that:

> " It is my understanding that you are continuing to contact the faculty in the Graduate Program in Civil and Environmental Engineering regarding pursuing a Ph.D. degree. . You have completed your work as a graduate student and you are no longer eligible to enroll... (emphasis added)."

12

48.    Subsequent communications between Plaintiff and Defendants Najm, Ozbay, Gurcunki, Cullani confirmed and that they chose not to restore Plaintiff's Ph.D. status at Rutgers.

49.    Subsequently, thereafter, Defendant Bender, by email dated Monday, April 20, 2015 at 1:40 PM confirmed that:

> " you are no longer eligible to enroll…(emphasis added).

50.    Plaintiff complained to the University and its representatives on October 15, 2015, however, it inexplicably chose to ignore Defendant Bender's unlawful conduct against Plaintiff.

51.    Despite Defendants' prior denials of wrongdoing and Defendant Bender's lies about Plaintiff and the review of his files, without the benefit of an investigation, Plaintiff's status was terminated on April 20, 2015, and Defendant Bender was never suspended for her unlawful conduct, lies, and interference with Plaintiff's status, and Defendants never held the hearing that is mandated to be held by Rutgers as a public University of the State of New Jersey.

52.    While, Plaintiff's Ph.D. status with the University was wrongfully terminated, Defendants Bender, Najm, Gucunski's assaultive, abusive and unlawful conduct and bullying against Plaintiff continued, and was publicly condoned by the University through the U.S. Department of Education Student Loan Servicer ("Nelnet" or "Navient" student loans servicers), as Defendants wrongfully reported to Nelnet and Navient that Plaintiff had withdrawn from Rutgers University on October 10, 2015. This was an additional and further lie represented to the Federal student loan services of the U.S. Department of

Education with intent to harm Plaintiff.

53. Thereafter, Defendants lied that Plaintiff would be supported with a scholarship at Rutgers to aid him in his Ph.D. research degree. This never materialized, and Plaintiff completed his advanced M.S. degree with all tuitions being paid by the U.S. Department of Education through Nelnet student loan servicing.

54. Plaintiff did not discover that Defendant Bird wrongfully altered the records to show Plaintiff was in School 53, and competed his degree in January 2013, while Plaintiff had actually been in School 16, and that as the result of this fraud by Rutgers, it received a Federal Student Loan payment of more than $5,000 in the Spring of 2013. Since then Plaintiff has continually paid interest on his Federal Student loan, and has thus been harmed.

55. Plaintiff currently owes for his Federal Student loan more than $75,000 plus interest continuously running, currently totaling over $4,500, because of the Defendants' wrongful acts, continually harming Plaintiff.

56. Defendants' unlawful actions and/or inactions as stated above cannot and should not be tolerated. Aside from the injury and damage to Plaintiff, immediate action is necessary in order to protect Plaintiff's status in the Ph.D.-M.S. program at Rutgers.

57. On October 23, 2015, Plaintiff requested from Defendant Barchi pursuant to University policy to set up a University Hearing Committee to investigate Defendants Bender, Najm, and Bird for a series of acts and misconduct against Plaintiff. From that time until now, Plaintiff's request and Legal Notice has been ignored.

58. Thereby, Plaintiff requested a hearing, or any kind of hearing whatsoever by Rutgers, which has also been ignored since October 23, 2015.

14

59. Plaintiff was punished and disciplined for non-academic matters including request letters sent to Defendants Najm and Gucunski for restoring his legal Ph.D. status, after completion of his M.S. program, and requesting that they stop their unlawful acts against Plaintiff, which requests were ignored. Plaintiff's Ph.D. status was unlawfully converted to an M.S. terminal degree.

60. Therefore, Defendants Bender, Najm, and Bird, public employees at a Public University, assaulted Plaintiff, intimidated, interfered and blocked Plaintiff's legal registration at the University toward his Ph.D., and thereafter Nelnet and Navient Federal student loan securers stated to Plaintiff that:

> "An update was received on your account on October 23, 2015, from National Student Clearinghouse advising that you withdrew from school on May 12, 2015…(emphasis added)"

The reporting by Defendants was an additional misrepresentation to deceive the Federal Government student loan provider.

61. Defendant Kukor since August 2014 until now failed to supervise his subordinates.

62. Thereby, principal agent Gary Brown, Chairman of the Defendant Board of The Board of Governors/Trustees of Rutgers, failed to supervise Defendants Barchi and Kukor as they have caused irreparable harm to Plaintiff by Defendants' actions or omissions which require that the court should issue an injunction, or temporary restraining order. Immediate judicial action is required to prevent an imminent injury for which there is no other way to prevent further harm. A standard for irreparable harm has been explained by the D.C. Circuit as follows:

15

"First, the injury must be both certain and great; it must be actual and not theoretical. Injunctive relief 'will not be granted against something merely feared as liable to occur at some indefinite time.' It is also well settled that economic loss does not, in and of itself, constitute irreparable harm. . . Implicit in each of these principles is the further requirement that the movant substantiate the claim that irreparable injury is 'likely' to occur. Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur. The movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future."

63. Plaintiff tried to obtain a final resolution of these issues by contacting Harry Agnostak, Assistant Vice President for Human Resources on November 14, 2015, in connection with the harassment against Plaintiff.

64. Plaintiff received an email dated 11/24/2015 in response from Emily J. Springer, Investigation and Resolution Specialist from the Office of Harry Agnostak. After speaking and explaining the harassment against me to Emily Springer, she told Plaintiff there would be another investigator that would be calling Plaintiff.

65. Thereafter, Plaintiff received another email from Lisa Grosskreutz, Director; University Human Resources dated 12/4/2015 that stated that:

66. "...it does not appear that your issues fall under the university Policy Prohibiting Discrimination and Harassment. However, Emily did indicate that you enrolled in a class that should have been $700 per credit, but on the official (Registrar's) records as cost $1,500/credit [Because different school within the University have different tuition rates]....University wrongfully received over $5,000 in federal funds...I am attaching the University's Conscientious Employee Protection Policy...(emphases added)."

Thereafter, Plaintiff attempted to contact Director Lisa Grosskreutz, who was unresponsive on several occasions, and Plaintiff's emails requesting follow up on Director Lisa Grosskreutz's suggestion were ignored.

16

67.  As a result of Defendants' fraudulent acts:

(a)  Plaintiff's PhD records were fraudulently changed to a Masters terminal degree;

(b)  Defendant Rutgers received over $5,000 from the Federal Government by a fraudulent accounting scheme between schools 53 and 16, which demonstrates that Defendants' conduct was against not only Plaintiff but also against the Federal Government.

68.  Furthermore, unrelated to the present action, but demonstrating Defendants' abuse and unlawful conduct are two separate cases involving Rutgers basketball scandals:

(a)  Eric Murdock v. Barchi, Richard and Rutgers et al. filed in 2013, over the treatment of Rutgers basketball players by head coach Mike Rice, then when Rutgers Assistant basketball Eric Murdock complained about the treatment of players, that was captured on a video, he was then fired by Rutgers.

(b)  Derrick Randal v. Rutgers et al. filed in December 6, 2013, eight month after Rutgers fired basketball coach Mike Rice for mistreatment of players, including Mr. Randal, who has learning disabilities and sought damages for assault and battery, negligent and intentional infliction of emotional distress and violation of his civil rights and the Americans with Disabilities Act and Rehabilitation Act. Rutgers settled on April 17, 2016, and agreed to pay $300,000 to former men's basketball player Derrick Randall.

## FIRST COUNT
### Breach of Contract
(Alleged against Rutgers University only)

69.  Plaintiff repeats and realleges each and every allegations contained in Paragraphs 1 through 68 of this Complaint, as if though fully set forth herein at length.

70.  At all times relevant to this action, Defendant Rutgers has had a contract with Plaintiff that is set forth in various writings including, but not limited to, graduate level

17

courses, Federal tuition payment, matriculation, Rutgers policies and procedures, and the Rutgers Graduate Student Manual. Plaintiff has complied with all of the above.

71. On April 20, 2015, Defendants breached Plaintiff's contract and wrongfully failed to judge him on the basis of merit and ability, and wrongfully and without cause prevented him from continuing with the Ph.D. program to which he had been admitted without cause, after completion of an M.S. and M.B.A. degree with excellent academic standing at Rutgers.

72. A valid contract existed between Plaintiff and Rutgers as of January 16, 2009, that Plaintiff was a Ph.D. candidate and part of the Ph.D. program, as follows:

a. If the Plaintiff complies with the terms prescribed by Rutgers, Rutgers would confer the Ph.D. degree on Plaintiff upon satisfactory completion of the research requirement of his final Ph.D. degree, and Rutgers had knowledge of this contract.

b. Plaintiff earned outside Rutgers three separate M.S. degrees but was made to get an additional M.S. degree at Rutgers at a substantial cost and time lost, instead of making progress towards the Ph.D. degree for which he had been admitted to Rutgers, and thereby Defendants breach the contract with Plaintiff.

c. Despite Plaintiff's completion of all degree requirements in October 2013, Plaintiff again and again requested to take additional courses toward his MS degree at Rutgers, but Defendants caused his graduation to be delayed from October 2013 to January 2014, and once again to be delayed by requiring him to take additional courses to May 2014. Thereby Plaintiff time wasted and paid substantial tuition from Federal funds to complete the M.S. degree, finally in May 2014.

18

d. Despite Plaintiff completing the requirements by attending all courses and having paid the prescribed tuition with Federal Student loan borrowing and having passed an oral examination on the submitted dissertation or projects before a three member panel of the examining Committee for an M.S. degree and his degree in transportation engineering, Defendants refused to turn over his MS diploma, and thereby breached the contract with Plaintiff.

73. Plaintiff performed all of his obligations as required including completion of his Masters degree after successful defense pf his thesis under the contract.

74. Rutgers has substantially and materially breached the contract by the acts described herein, which were spurred by Defendants Bender and Najm, who were desiring to curry favor with Defendants Gucunski, Kukor, and Barchi. Defendant Bender intentionally caused Rutgers University's breach of its contract with Plaintiff.

75. Plaintiff performed all of his obligations as required under the contract.

76. As a substantial and proximate result of Rutgers University's breach of its contract, Plaintiff has been damaged and harmed.

77. As a result of Rutgers University's breach of its contract, as such, Plaintiff is entitled to an award of actual damages, loss of income, in an amount to be determined at trial.

## SECOND COUNT
### Breach of Implied Covenant of Good Faith and Fair Dealing
(Alleged against Rutgers only)

78. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 77 of this Complaint, as if fully set forth herein at length.

79.     Plaintiff's educational agreement is subject to an implied covenant of good faith and fair dealing by which Defendants and Rutgers University promised to give full cooperation to Plaintiff in his performance under the educational agreement and to refrain from any act that would prevent or impede Plaintiff from performing under the conditions of the agreement, and from successfully completing his research Ph.D. program for which he was most qualified and admitted to Rutgers University.

80.     At all times relevant to this action Rutgers University represented to Plaintiff in various writings including, but not limited to, registration in graduate courses, successful completion and achievement at a high level academic standard judged by a grade in the registered courses under Rutgers policies and procedures, payment of U.S. Department of Education tuition fees, matriculation of a degree program under Rutgers policies and procedures, and Rutgers Civil and Environmental Engineering Department Graduate Student Manual as part of the contract.

81.     At all times herein mentioned, there existed an implied covenant of good faith and fair dealing incidental to the contracts between Plaintiff and Rutgers University. Rutgers University, breached the duty of good faith and fair dealing owed to Plaintiff in the following respects:

(a)     Defendants unreasonably and in bath faith by a series of acts against Plaintiff prevented Plaintiff from obtaining his degree while accepting his tuition on Federal Student Loan, and failing to provide any reasonable explanation for Defendants' acts against Plaintiff, while Plaintiff was achieving highest academic records in Rutgers Official and Accurate Records;

20

(b) Defendants have refused any hearing from the University Standing Committee or any Hearing Committee as requested by Plaintiff to determine why Plaintiff was not allowed to complete his final research Ph.D. degree after completion of his M.S., and after having earned for four separate certificates in his respective field at Rutgers.

82.   As a direct and legal result of the aforementioned unreasonable and bad faith conduct of Rutgers, Plaintiff has suffered damages, for an amount to be determined in a trial.

83.   As part of the aforesaid duty of Defendants, Defendants were required to remain in good faith compliance with the law, including that employees would be treated fairly and equitably, that any matriculated graduate candidate would be judged on the basis of individual merit and ability, and that Plaintiff would receive a high level of academic quality of courses at Rutgers. These provisions and representations form part of Plaintiff' contract and relationship with the Defendants.

84.   Defendants and Rutgers breached the implied covenant of good faith and fair dealing with regard to Plaintiff by:

(a)   refusing to judge him strictly on the basis of his ability and merit;

(b)   failing and refusing to consider such merit and ability for continuing in his research Ph.D. program;

(c)   failing to give any consideration to Plaintiff's record of exceptional academic achievement as a member of Rutgers' academic community, and

(d)   retaliating against him for reporting the unlawful conduct of Defendants Bender, Najm, Ozbay, Cullari, and Gucunski.

85.  As a proximate cause of Defendant's breach of the covenant of good faith and fair dealing, Plaintiff, has suffered and continues to suffer damages.

86.  As a direct and legal result of the aforementioned unreasonable and bad faith conduct of Rutgers, Plaintiff has suffered damages under the contract, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

87.  By the anticipatory breach of contract Rutgers failed to live up to a contract, before the time of performance arrived, put it out of their power to perform the contract and as a result Plaintiff was damaged.

88.  By preventing Plaintiff from completing his final research Ph.D. degree as he was duly admitted to Rutgers for, and after Plaintiff successfully completed his M.S. and M.B.A. degrees, Rutgers engaged in an anticipatory reputation of its contract with Plaintiff, causing damages.

89.  As a direct and proximate result of the breach of the implied covenant of good faith and fair dealing, Plaintiff has sustained damages, been delayed and prevented from obtaining his final research Ph.D. degree from Defendant University, thereby losing income and earning capacity, all in a sum according to proof at the time of trial.

90.  As a direct and legal result of the aforementioned acts of Defendants, Plaintiff has suffered and will continue to suffer in the future, damages under contract, plus interest, and other economic and consequential damages.

91.  Defendants' conduct as described herein was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages in an amount to be determined at trial.

22

## THIRD COUNT
### Interference with Contract
(Alleged against Individual Defendants)

92.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 91 of this Complaint, as if fully set forth herein at length.

93.  The individual Defendants had knowledge of the aforesaid valid contract that existed between Plaintiff and Rutgers, that Plaintiff performed his obligation under the contract, and that Plaintiff was entitled to the benefit of Rutgers' performance of the contract, including the receipt of M.S. and M.B.A. degrees in a timely fashion, and the right to complete at Rutgers University his research Ph.D. degree.

94.  On or about July 13, 2015 Plaintiff and Rutgers, through its agents Professor Tse, with approval of Professor Gea, as graduate director of the MAE, entered into a contract by which Plaintiff was transferred to the MAE department Ph.D. program and approved plaintiff registration for a course " You can register for the course before the other paper work is complete...." After, transfer to MAE Plaintiff was asked to work on research grants to generate external money in the MAE Department at Rutgers to carry out research on projects in Professor Tse' labs and  to generate external research money with the approval of Professor Hae Chang Gea, Graduate Program director of the MAE Department for Ph.D. program.  Plaintiff filed a transfer application to the MAE Department with help of Cynthia Cartegna, Administrative Assistant who informed the Plaintiff on Friday, July 17, 2015 at 12:24 PM that:

> "...Your form (transfer form to MAE Department) was
> sent to the graduate school, it will take a few days to update..."

23

95.   Individual Defendants knew that there was an existing enforceable contract between Plaintiff and Rutgers, and deliberately interfered in the contract and with Plaintiff's relationship with Professor Tse and with the newly appointed Jerry Shan, who became the new Graduate Program director and objected to Plaintiff's transfer to the MAE Department without review of Plaintiff's file. Defendants' unlawful acts thereby caused Rutgers to breach its contract with Plaintiff. Thereafter, Plaintiff's transfer to the MAE Department did not occur, thereby Plaintiff once again was harmed by the deceitful acts of Defendants.

96.   The individual Defendants knew that there was an existing enforceable contract between Plaintiff and Rutgers, and deliberately interfered with the contract and with Plaintiff's relationship with Professor Tse.

97.   Upon information and belief, the deceitful acts described in the foregoing paragraphs on the part of Defendants were motivated by the intention to damage Plaintiff in order to curry favor with the other Defendants.

98.   Defendants' intentional interference with Plaintiff's contract is continuing and ongoing.

99.   As a direct and proximate result of their interferences with Plaintiff's rights to obtain employment in a similar research lab, Defendants have damaged and prevented Plaintiff from obtaining another position and doing research towards his final Ph.D. degree, and have caused Plaintiff to sustain injury and damages.

100. Defendant Bender's acts and series of acts against Plaintiff were motivated by intent to damage Plaintiff in order curry favor with Defendants Najm and Gurcunki.

24

101. Therefore, as a result of Defendants' series of acts, Plaintiff has sustained injury and damages to be determined at trial.

## FOURTH COUNT
### Fraud
(Alleged against Rutgers University)

102. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 trough 101 of this Complaint, as if fully set herein at length.

103. During the period of completion of the Ph.D. program, and after completion of his M.S. degree in the transportation engineering field, and for a reasonable period prior to August 20, 2014 until April 20, 2015, Rutgers intentionally, knowingly, and falsely represented to Plaintiff there was no obstacle to his completion of his Ph.D. program to which he was admitted.

104. Plaintiff's Ph.D.-MS records at the Registrar's Office were fraudulently altered by Defendants to an MS terminal degree.

105. Thereafter, Defendants terminated Plaintiff from the Ph.D. program on April 20, 2015 in breach of the parties' contract.

106. Plaintiff justifiably relied on Defendants' statements concerning his pursuance of his Ph.D. degree to his detriment in that Plaintiff was delayed and prevented from taking action to ensure that after his master's degree was awarded that his status in the Ph.D. program was properly recognized. On Wednesday, February 11, 2009 at 9:54 AM Defendant Cullari stated that:

> "...you are going into straight Ph.D. program...
> upon completion of M.S. degree...(emphasis added)."

This did not occur because of the aforementioned series of unlawful acts of

25

Defendants against Plaintiff.

107. After Plaintiff's completion of his masters degree in May 2014, Plaintiff discovered that his records had been changed from Ph.D. degree to an M.S. terminal degree.

108. Thereafter, Plaintiff wrote to Defendants Barchi and Kukor that his Ph.D. status Ph.D. had been maliciously changed by Defendants to M.S. status, and demanding that his Ph.D. status be restored immediately.

109. Defendant Bender made false statements to Jerry Shan that Plaintiff was not in good academic standing thereby misrepresenting the facts in regards of Plaintiff was in excellent academic standing and had Ph.D. status at the University.

110. Defendants Bird, Barchi, Kukor, Rutgers and or their representatives pursued the common goal of defrauding Plaintiff in connection with a U.S. Department of Education loan, and invented a scheme of accounting fraud to receive more than $5,000 of loan money on the false premise that Plaintiff was in a program in School 53 where tuition was about $1,500 per credit. However, Plaintiff was taking courses in School 16 with tuition fees of about $700 per credit. The wrongful acts of Defendant Bird continually showed that Plaintiff was in school 53, thereby Rutgers received for more than $5,000 from U.S. Department of Education through Nelnet since Spring 2013.

111. Plaintiff protested on various occasions this invented scheme of accounting fraud whereby the University received over $5,000 from the U.S. Department of Education via Nelnet of student funds. Plaintiff protested that Rutgers return the funds to Plaintiff's Rutgers account, but the protests were ignored. Therefore, Rutgers obtained by fraud over $5,000 in funds from the U.S. Department of Education since Spring 2013.

26

112. Defendant Bird with unlawful intent and willful conduct invented a scheme of accounting fraud to Plaintiff's record, involving a misrepresentation between schools 53 and 16, and Defendant Rutgers as a result received excess tuition fees of over $5,000.

113. Defendants Bird, Rutgers and/or their representatives pursued the common goal of engaging in a scheme of accounting fraud to defraud the Federal Department of Education, therefore, unjustifiably Rutgers received over $5,000 from a Federal Student loan by violating Federal and State of New Jersey laws, including Rutgers' internal audit and compliance requirements.

114. Defendant Bird also failed to maintain Plaintiff's true Ph.D. status in the University's Registrar's Office and violated Rutgers' integrity of records.

115. Defendant Rutgers University, and/or their representatives pursued the common goal of not restoring Plaintiff's lawful Ph.D. status as a result of his complaints of Defendant Bender, Najm's unlawful conduct and to otherwise attack his academic standing, and records, with lies and unfounded characterizations.

116. Defendants Barchi, Kukor, and Rutgers University or their representatives have taken to no action to rectify these matters, despite Plaintiff's complaints from August 2014 and thereafter.

117. As a direct and proximate result of the foregoing fraud upon Plaintiff's records, he has been damaged and will continue to suffer damages in the amount to be determined at trial.

### FIFTH COUNT
**Intentional Misrepresentation**
(Alleged against Rutgers University)

118. Plaintiff repeats and realleges each and every allegation contained in

27

paragraphs 1 through 117 of this Complaint, as if fully set forth herein at length.

119.   During the period of completion of his Ph.D. program and after completion of his M.S. degree in the transportation engineering field, and for a reasonable period prior to August 14, 2014 until April 20, 2015, Rutgers intentionally and knowingly misrepresented to Plaintiff that there was no obstacle to his completion of his Ph.D. degree to which he was admitted.

120.   Plaintiff justifiably relied on the aforesaid fraud to Plaintiff's records to his detriment in that he was delayed and prevented from taking action to ensure that after his master's degree was awarded that the Ph.D. program was properly recognized upon completion of his master degree. To that end, on Wednesday, February 11, 2009 at 9:54 AM Defendant Cullari stated that:

> "...doctoral track masters' that you enrolled in the MS program and are going straight into Ph.D. program...(after completion of M.S. degree program)...if you have any question regarding that to contact them (732-932-7711)...(emphasis added)"

This never materialized because of the series of unlawful acts of Defendants against Plaintiff.

121.   After Plaintiff's completion of his masters degree in May 2014, Plaintiff discovered that his records had been fraudulently changed from Ph.D. degree to an M.S. terminal degree.

122.   Thereafter, Plaintiff wrote to Defendant Barchi and Kukor that his status was Ph.D., and that Defendants who had maliciously changed his Ph.D. status to MS status should restore his Ph.D. status immediately.

28

123.  Defendant Bender on 4/20/2014 made a misrepresentation to Plaintiff that:

" …As a result of your academic progress you are granted a
Terminal master's degree…You completed his studies and received a
terminal  master's degree. You have completed your work as a
graduate student and you are no longer eligible enroll…"
(emphasis added).

124.  Defendants misrepresented Plaintiff's Rutgers Official Records as to Ph.D.
status by means of another misrepresentation to the new MAE Department Graduate Director
Jerry Shan. Thereby, Defendants continued to mislead others regarding Plaintiff's Ph.D.
standing at the University and informing the National Student Association that Plaintiff had
withdrawn from Rutgers.

125.  Defendants and Rutgers University, and/or their representatives pursued the
common goal of not restoring Plaintiff's lawful Ph.D. status as a result of his complaints
about Defendant Bender, Najm's unlawful conduct, and otherwise attacked his academic
standing and records, with lies and unfounded characterizations.

126.  Defendants Barchi, Kukor, and Rutgers University or their representatives
have taken no action to rectify the aforementioned matters, despite Plaintiff's complaints
from August 14, 2014, and thereafter.

127.  Defendants Barchi, Kukor, Rutgers and or their representatives agreed to
and/or ratified the course of action taken in due course in August 2014, by
misrepresentations.

128.  Defendants made the above misrepresentations with the intention that Plaintiff
rely on such in order to induce Plaintiff to continue his studies at Defendant Rutgers
University.

29

129. Defendants made misrepresentation through the National Student Clearinghouse to Nelnet and Navient that Plaintiff:

" …has withdrawn from University…"

As a matter of fact Plaintiff had neither withdrawn nor applied to withdraw from the University, but instead his Ph.D. program enrollment had been blocked by Defendants.

130. As a direct and proximate result of these actions, Plaintiff sustained damages and will continue to suffer damages in the amount to be determined at trial.

### SIXTH COUNT
#### Negligence
#### (Alleged Against all Defendants)

131. Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 130 of this Complaint, as if fully set forth herein at length.

132. Defendants Barchi, Kukor, and Rutgers or their representative owed a duty to exercise the care and or caution necessary to protect its students and members of the University community in good standing both morally and academically from the unlawful actions of Defendants Bender, Najm, Ozbay, Gucunski, and Cullari.

133. Defendants Barchi, Kukor, and Rutgers and/or their representatives knew or had reason to know of Defendants Bender, Najm, Ozbay, Gucunski, and Cullari's unlawful conduct and behavior by the way of Plaintiff's complaints and reports and/or otherwise.

134. Defendants Barchi, Kukor, and Rutgers and/or their representatives failed to exercise reasonable care in supervising Defendants Bender, Najm, Ozbay, Gucunski, and Cullari in protecting the integrity of Rutgers academic records and the welfare of its graduate students, and others as detailed in the aforementioned.

30

135.   Defendants breached their duty of care by negligently, accidently or recklessly creating a punishing, hazardous and unduly hush graduate study environment for Plaintiff, and by negligently or recklessly failing to provide Plaintiff necessary fair graduate study support.

136.   Defendants' breach of this duty directly or proximately caused Plaintiff to suffer damages including fear, humiliation, and pain by Defendants' negligent acts as aforementioned.

137.   As a result, Plaintiff has been damaged and will continue to suffer damages, in an amount to be determined at trial.

## SEVENTH COUNT
### New Jersey Anti Bullying Laws
### (Alleged Against all Defendants)

138.   Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 137 of this Complaint, as if fully set forth herein at length.

139.   Defendants Barchi, Kukor, Rutgers and/or their representatives owed a duty to exercise the care and/or caution necessary to protect its graduate students from the unlawful actions of Defendant Bender in which Defendant Bender bullied Plaintiff on Monday, April 20, 2015 at 1:40 PM by stating that:

> "It is my understanding that you are continuing to contact the faculty.
> In the Graduate Program in Civil and Environmental Engineering regarding pursuing a Ph.D. degree...You have completed your work as a graduate student and you are no longer eligible to enroll...(emphasis added)."

Plaintiff did not ask Defendant Bender to write Plaintiff a letter nor make any request to Defendant Bender, yet Defendant Bender continued to bully and intimidate Plaintiff in violation of New Jersey's anti bullying laws.

31

140. Defendants Barchi, Kukor, Rutgers and/or their representatives knew or had reason to know of Defendant Bender, Najm, and Gucunski's unlawful conduct and behavior by way of Plaintiff's complaints and reports and/or otherwise.

141. Defendants Barchi, Kukor, Rutgers and/or their representatives failed to exercise reasonable care in supervising Defendant Bender, Najm, and Gucunski in protecting the safety of Plaintiff as a Ph.D. status as aforementioned.

142. As a result of Defendants' violation of New Jersey's Anti Bullying Laws as mentioned in the above, Plaintiff, has been damaged and will continue to suffer, the amount to be determined at trial.

## EIGHTH COUNT
### Interference with prospective economic advantage
(Against all Defendants)

143. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 142 as if fully set forth herein.

144. Plaintiff had reasonable expectation of economic advantage or benefits resulting from his continued development as a highly qualified Professor in the transportation engineering field with multiple masters degrees and an additional M.S. degree in the transportation field and an M.B.A. from Rutgers, had Plaintiff been permitted to pursue his Ph.D. degree at Rutgers as promised by Rutgers and as was contractually required, and thereby to have a career as a transportation professional with a Ph.D. degree and/or to secure executive employment in the transportation industry, making substantial earnings.

145. Defendants, directly and or through their agents had knowledge of such expectancy of economic advantage.

32

146.   Defendants wrongly, without justification and in other manners, directly and/or through their agents, interfered with Plaintiff's expectancy of advantages or benefits.

147.   In the absence of such interference, it is reasonably probable that Plaintiff would have realized and obtained a full Professorship in the transportation engineering field at a University or a College to his economic advantage or benefit.

148.   Plaintiff sustained damages and harm as a result of such interference.

149.   As a results of Defendants' acts aforementioned, Plaintiff is entitled to recover from Defendants, the amount to be determined at trial.

## NINTH COUNT
### New Jersey State Constitutional Violations
(Against Rutgers only)

150.   Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 149 of this Complaint, as if fully set forth herein at length.

151.   Each and every of the Defendants' actions as set forth above have deprived Plaintiff of rights and privileges afforded to him under the Articles and paragraphs of the New Jersey Constitution.

152.   Rutgers is a public university, and receives public funding in addition to Federal and State funding to its programs, and Plaintiff has a due process hearing right for non-academic matters. Plaintiff requested repeatedly from Defendants and a University Standing Committee, that he be afforded his right for a hearing, but was ignored, thereby Plaintiff was not accorded a hearing from Rutgers for these issues.

153.   Defendants' actions as aforementioned have deprived Plaintiff of his rights to procedural and substantive due process under Article 1, paragraph 1 of the New Jersey Constitution.

33

154. Defendants denied Plaintiff his civil rights afforded under Article 1, paragraph 1 of the New Jersey State Constitution.

155. Each and every Defendant knew that they were violating the rights of Plaintiff as guaranteed to him in the State of New Jersey Constitution.

156. As a further proximate result of Defendants' acts aforementioned and unconstitutional conduct, Plaintiff sustained damage to his reputation and other injuries.

157. In addition, the basis for the right to a hearing are the rights in the Rutgers graduate student manual.

158. As a proximate results of Defendants' actions, Plaintiff has been harmed and damaged, in the amount to be determined at trial

### TENTH COUNT
### United States Constitutional Violation of the Fifth and Fourteenth Amendments of Procedural Due Process under 42 U.S.C. § 1983
### (Against Rutgers only)

159. Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 158 of this Complaint, as if fully set forth herein at length.

160. Public universities for non-academic issues, are required to provide a due process hearing right to Plaintiff. Despite requesting repeatedly from Defendants that a University Standing Committee hold a hearing, was his right, Plaintiff was ignored, thereby Plaintiff was not accorded a hearing on non-academic issue concerning Plaintiff at Rutgers.

161. Defendants' actions as set forth above violated Plaintiff's rights to substantial due process under the Fifth and Fourteenth Amendments to the United States Constitution, and Plaintiff suffered damages in the form of constitutional deprivation and damage to his reputation and other injuries.

34

162. 42 U.S.C. § 1983 provides that:

" [e]very person who, under color of any stature,
ordinance, regulations, custom, or usage , of any State...
subjects, or causes to be subjected, any citizen of the United
States or any person within the jurisdiction thereof to be
deprivation of any rights, privileges, or immunities secured by
Constitution and laws, shall be liable to party insured in an
action at law."
42 U.S.C.§1983.

163. Plaintiff is a United States citizen with all privileges granted to him by the United States secured by the Constitution and laws.

164. Defendants' actions were undertaken to deprive Plaintiff of Substantial Due Process guaranteed to him under the Fifth and Fourteenth Amendments, and are actionable under 42 U.S.C. §1983, and afford Plaintiff remedies.

165. Defendant Rutgers directly and/or through their agents, under color of law, deprived Plaintiff of his Constitutional rights, including his rights to substantial due process under the Fifth and Fourteenth Amendment of the United States Constitution with non-academic issues involved.

166. Defendant Rutgers is a public university and received public funds and Federal funds to its programs, and was required to afford hearing rights to its students under the Fifth and Fourteenth Amendments of the United States Constitution.

167. Defendants, directly or through their agents, acted with reckless and/or deliberate indifference to Plaintiff's constitutional rights and engaged in conduct which shocked a normal Ph.D. candidate with the highest moral standards, and character, and who was a member of the Rutgers community with outstanding records at Rutgers.

168. Defendants, directly and/or through their agents, caused Plaintiff to be continuously subjected to Defendants Bender and Najm, who deprived Plaintiff of his right to

35

be free from harassment and intimidation and unlawful conduct.

169. Defendants, directly and/or through their agents, engaged in conscience-shocking conduct which increased harm to Plaintiff by causing Plaintiff to be continuously subjected to Defendants Bender, Najm abusive conduct.   Thereby Defendants' conduct constitutes a violation of 42 U.S.C. § 1983.

170. Defendants are liable for punitive damages under 42 U.S.C. § 1983 because they were motivated by evil motive or intent to deny Plaintiff his protected 42 U.S.C. § 1983 rights.

171. In addition, Plaintiff has the right to procedural due process, under the Rutgers Code of Student Conduct, and the University Hearing Board by Standing Committee's hearing rights, to a fair hearing. Plaintiff has a right to a hearing before a Committee to cross examine adverse witnesses, confront the person accusing him of wrongdoing, a reasonable evidentiary standard, and Plaintiff's right to remain silent and testify on his behalf.

172. Rutgers as a public University, is required to adhere to its published hearing rights for any tuition-paying, matriculated, and registered graduate students to be afforded hearing rights.

173. As a result of Defendants' violation of Plaintiff's due process hearing rights aforementioned, Plaintiff has been damaged, the amount to be determined at trial.

WHEREFORE, Plaintiff, prays for Judgment against all Defendants, and each of them, for the following:

    A.  Injunctive relief as follows:

    1.  An order compelling an immediate restoration and certification of Plaintiff's Ph.D. status at Rutgers;

    2.  An order compelling an immediate hearing by the University Standing Committee and the conducting of an investigation of Defendants Bender, Najm, Cullari, Gucunski, and Bird's unlawful conduct complained of in this Complaint;

    3.  An order requiring that Defendant Rutgers University follow and adhere its own policy and accord Plaintiff due process hearing rights, and follow its adopted policy on the abuse, harassment, and bullying complained of in this Complaint;

    4.  An order enjoining Defendants from taking retaliatory action of any type against Plaintiff or any employees for reporting Defendants' improper activities, policies, and/or practices believed to be in violation of contract, law, rule, and/or regulation promulgated pursuant to law;

    5. Any other prospective injunctive relief that the Court finds just and appropriate under the circumstances.

    B.  Compensatory damages;

    1. On the first count, compensatory damages against Defendants, jointly and severally, in an amount to be determined by a trier of fact, but believed to be in excess of $2 million.

37

2.  On the second count, compensatory damages against Defendants, jointly and severally, in an amount to be determined by a trier of fact, but believed to be in excess of $2 million.

3.  On the third count, compensatory damages against Defendants, jointly and severally, in an amount to be determined by a trier of fact, but believed to be in excess of $2 million.

4.  On the fourth count, compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial.

5.  On the fifth count, compensatory damages against Defendants, jointly and severally, in an amount to be determined by a trier of fact, but believed to be in excess of $2 million.

6.  On the sixth count, compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial.

7.  On the seventh count compensatory damages against Defendants, jointly and severally, in an amount to be determined by a trier of fact, but believed to be in excess of $2 million.

8.  On the eight count, compensatory damages against Defendants, jointly and severally, in an amount to be determined by a trier of fact, but believed to be in excess of $2 million.

9.  On the ninth count, compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial.

38

10. On the tenth count, compensatory damages against Defendants, jointly and severally, in an amount to be determined by a trier of fact, but believed to be in excess of $2 million.

    C.   Incidental damages;

    D.   Consequential damages;

    E.   Punitive and/or treble damages;

    F.   Costs of suit and disbursements;

    G.   Attorneys' fees;

    H.   Interest; and

    I.   Such other and further relief as the Court deems just and proper or equitable under the circumstances.

DATED: January 23, 2017

_____
PROFESSOR R.K., M.S., M.S., M.S.,M.S.,M.B.A.
Plaintiff, Pro se

## JURY DEMAND

R. K., Plaintiff, Pro se, hereby demands a trial by jury as to all issues.

_____
PROFESSOR R.K., M.S., M.S., M.S., M.S.,M.B.A.
Plaintiff, Pro se

DATED: January 23, 2017

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE OR
## INDEMNIFICATION AGREEMENTS

Pursuant to R. 4:10-2(b), demand is made that Defendants disclose to Plaintiff, Pro se whether or not there are any insurance or indemnification agreements or policies under which any person or firm carrying on an insurance or other business may be liable to satisfy part or all of a judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff with true copies of those insurance or indemnification agreements or policies, including, but not limited to, any and all declaration sheets. **This demand shall include and cover not only primary coverage, but also any and all excess, catastrophe and umbrella policies.**

PROFESSOR R.K.,M.S, M.S., M.S.,M.S.,M.B.A.
Plaintiff, Pro se

DATED: January 23, 2017

40

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to Rule 4:5-1, it is stated that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of our knowledge or belief. Also, to the best of our belief, no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this pleading, we know of no other parties that should be joined in the above action. In addition, we recognize the continuing obligation of each party to file and serve on all parties and the Court an amended certification if there is a change in the facts stated in this original Certification.


PROFESSOR R.K., M.S.,M.S.,M.S.,M.S.,M.B.A.
Plaintiff, Pro se


DATED: January 23, 2017

# Exhibit B

Sean R. Kelly (NJ Attorney ID # 019201979)
John F. Finnegan III (NJ Attorney ID # 044502011)
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2266
(973) 622-3333
*Attorneys for Defendants*
*Barbara E. Bender, Nenad Gucunski (improperly pleaded as "Nenand Gucunski"),*
*Gina Cullari, Robert L. Barchi, and The Board of Governors/ The Trustees of Rutgers,*
*The State University of New Jersey*

| | |
|---|---|
| R.K.<br><br>                    Plaintiff,<br><br>            v.<br><br>BARBARA E. BENDER, HUSAM NAJM,<br>KAAN OZBAY, NENAND GUCUNSKI,<br>GINA CULLARI, RICHARD BIRD,<br>JEREMY J. KUKOR, ROBERT L. BARCHI,<br>and THE BOARD OF GOVERNORS/THE<br>TRUSTEES OF RUTGERS, THE STATE<br>UNIVERSITY OF NEW JERSEY,<br><br>                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION:  ESSEX COUNTY<br>DOCKET NO.: ESX-L-0564-17<br><br>Civil Action<br><br>**NOTICE OF NOTICE OF REMOVAL** |

To:     Clerk, Superior Court of New Jersey
        Essex County Superior Court
        50 West Market Street
        Newark, New Jersey 07102

cc:     The Honorable Grace L. Spencer, J.S.C.
        Essex County Superior Court
        Hall of Records
        465 Martin Luther King Blvd.
        Room 228
        Newark, New Jersey 07102

        Resat Keles
        626 Riverside Drive
        Apartment 10C
        New York, NY 10031

**PLEASE TAKE NOTICE** that Defendants Barbara E. Bender, Nenad Gucunski (improperly pleaded as "Nenand Gucunski"), Gina Cullari, Robert L. Barchi, and The Board of Governors/The Trustees of Rutgers, The State University of New Jersey have on this day filed a Notice of Removal with the Honorable Judges of the United States District Court for the District of New Jersey.  Pursuant to 28 U.S.C. § 1446(d), a copy of the Notice of Removal is attached hereto as Exhibit 1 and made a part hereof, which effectuates the removal of this case and terminates the matter in this Court.

SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2266
Tel.:    (973) 622-3333
Fax:    (973) 622-3349
*Attorneys for Defendants*
*Barbara E. Bender, Nenad Gucunski (improperly*
*pleaded as "Nenand Gucunski"), Gina Cullari,*
*Robert L. Barchi, and The Board of Governors/*
*The Trustees of Rutgers, The State University of*
*New Jersey*

By: _____
        SEAN R. KELLY

Dated: February 24, 2017

2

## CERTIFICATION OF SERVICE

I hereby certify that on this date, I caused to be served by Federal Express the original and two (2) copies of this Notice of Notice of Removal with Exhibit 1 attached hereto, for filing with the Clerk of the Superior Court of Essex County at the following address:

> Clerk, Superior Court of New Jersey
> Essex County Superior Court
> 50 West Market Street
> Newark, New Jersey 07102

I further certify that on this date, I caused to be served by Federal Express a courtesy copy of this Notice of Notice of Removal with Exhibit 1 attached hereto, with the Honorable Grace L. Spencer, J.S.C, at the following address:

> The Honorable Grace L. Spencer, J.S.C.
> Essex County Superior Court
> Hall of Records
> 465 Martin Luther King Blvd.
> Room 228
> Newark, New Jersey 07102

I further certify that on this date, I caused to be served by Federal Express a copy of this Notice of Notice of Removal with Exhibit 1 attached hereto, by Federal Express upon *pro se* plaintiff Resat Keles at the following address:

> Resat Keles
> 626 Riverside Drive
> Apartment 10C
> New York, NY 10031

I certify that the foregoing statements made by me are true. I am aware that if any of these statements are willfully false, I am subject to punishment.

SEAN R. KELLY

Dated: February 24, 2017

3