**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RESAT KELES,

              Plaintiff,

       v.

BARBARA E. BENDER, *et. al.*,

              Defendants.

Civil No. 17-1299 (ES) (JAD)

OPINION

MCNULTY, DISTRICT JUDGE

Before the Court is the motion (DE 99) of defendant Rutgers, the State University of New Jersey, for summary judgment pursuant to Federal Rule of Civil Procedure 56. The matter has been referred from Judge Salas to me for purposes of this motion. Having considered the parties' submissions[1] in support of and opposition to the pending motion, I decide the motion without

---

[1] Citations to record documents will be abbreviated as follows:

  Compl. = Plaintiff's complaint, DE 1, Exhibit A

  Mov. Br. = Rutgers' brief supporting its summary judgment motion, DE 99-1

  SUMF = Rutgers' statement of undisputed material facts, DE 99-2

  Kelly Decl. = Declaration of Sean R. Kelly supporting Rutgers' motion, DE 99-3

  Cullari Decl. = Declaration of Gina Cullari supporting Rutgers' motion, DE 99-4

  Opp. Br. = Plaintiff's brief in opposition to Rutgers' motion for summary judgment, DE 105 (originally filed at DE 102; refiled with a table of contents pursuant to a court order)

  Pl. Aff. = Plaintiff's affidavit opposing Rutgers' motion, DE 102-1

  Resp. SUMF = Plaintiff's responses to Rutgers' SUMF, DE 102-2

  Reply Br. = Rutgers' reply in further support of its motion, DE 103

oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the following reasons, the Court GRANTS the motion for summary judgment.

## I.   Background[2]

This action concerns Plaintiff Resat Keles's entitlement, or not, to be enrolled in the Ph.D. program in the Department of Civil and Environmental Engineering ("CEE Department") at Rutgers, the State University.

In 2008, Mr. Keles applied for admission to the Transportation Engineering Ph.D. program[3] in the CEE Department at Rutgers. (SUMF ¶ 1).

---

[2]      The background facts are drawn from the statements of material facts and exhibits submitted by the parties.

Plaintiff here often "denies" facts, without a relevant record citation or further explanation. (*See* Resp. SUMF, *passim.*). To "deny" a fact, for summary judgment purposes, requires more than mere gainsaying. Although Plaintiff's responses "aim to create the appearance of factual disputes," in many instances, the cited exhibit does not actually refute the relevant fact. *See Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019). Relevant instances are identified in the course of this opinion. The seven-page statement of facts contained in Plaintiff's opposition brief does not fare much better. Plaintiff often fails to cite record evidence, instead falling back on general statements that "the true facts are in dispute," and "the record is clear." (*See* Opp. Br. at 7–14). Plaintiff's imputations of "professional misconduct," fabrication of evidence, and "massive fraud," because they are unsupported, require no further comment.

I will deem supported factual contentions to be admitted, unless sufficiently disputed by reference to evidence of record. *See Ullrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x 132, 137 (3d Cir. 2012) (explaining that under Rule 56, a court "may consider undisputed any fact not properly addressed by the party opposing it"); *Stouch v. Twp. of Irvington*, No. 03-6048, 2008 WL 2783338, at *2 n.1 (D.N.J. July 16, 2008); *Apatoff v. Munich Re Am. Servs.*, 2014 U.S. Dist. LEXIS 106665, *2 n.1 ("The Court disregards all such responses that are not responsive to the stated facts, but rather attempt to marshal additional facts in rebuttal.").

[3]      Defendant does not specify the graduate program Plaintiff applied to. (SUMF ¶ 1). Plaintiff says he applied to the Ph.D. program in transportation engineering, which seems to be corroborated by the admission certificate attached to his papers. (Resp. SUMF ¶ 1 (citing Pl. Aff., Ex. B)). Plaintiff's evidence being the only direct evidence on the point, I credit it.

On or about January 16, 2009, Rutgers issued to Mr. Keles a certificate of admission. This certificate states that Keles was admitted to the Ph.D. program in the CEE Department for the spring term of 2009. (SUMF ¶ 8; Resp. SUMF ¶ 8; Kelly Decl., Ex. 6). The certificate of admission contains a "special condition" requiring that Mr. Keles submit official undergraduate and graduate transcripts showing prior degree(s) awarded. (Kelly Decl., Ex. 6). Mr. Keles submitted his transcripts. However, for financial reasons, he did not wish to enroll in any program at Rutgers for the spring 2009 semester. (SUMF ¶ 9; Opp. Br. at 4).

In February 2009, Mr. Keles communicated with Rutgers about deferring his acceptance until the fall 2009 semester. (Opp. Br. at 4; Kelly Decl., Ex. 9). Meanwhile, upon reviewing Mr. Keles's transcripts, Rutgers learned that he did not possess the particular M.S. degree that is a prerequisite to the Ph.D. program he wished to enter. (SUMF ¶¶ 10 & 14). Specifically, although Mr. Keles had degrees in other areas, he did not have the required M.S. degree in transportation engineering.[4] (SUMF ¶¶ 6–7). Mr. Keles was made aware of this requirement before enrolling at Rutgers for the fall 2009 semester. (SUMF ¶¶

---

[4]     As to this fact, there is no evidentiary dispute in the summary-judgment sense. Defendant states that "[a]t the time of Plaintiff's application, Plaintiff did not have an M.S. degree in [t]ransportation [e]ngineering." (SUMF ¶ 7). This averment is supported by Defendant's citation to an excerpt from Mr. Keles's deposition in which Keles acknowledges that he did not get any degree from any institution in transportation engineering before going to Rutgers. (Kelly Decl., Ex. 1 at 20:14–20). In his responsive statement, Plaintiff denies this fact, citing to Plaintiff's Exhibit K, a 2014 letter from himself to Dean Kukor regarding "fraud to MS/PhD." If anything, the letter seems to confirm that, although Mr. Keles had M.S. degrees when he applied to Rutgers, he did not have an M.S. degree in transportation engineering. Indeed, he went on to obtain that M.S. degree in transportation engineering from Rutgers. (*See* Pl. Aff., Ex. K).

14–15).

According to Rutgers, on February 11, 2009, Mr. Keles reapplied for admission for the fall 2009 semester, this time stating that he was applying to the M.S. program in the CEE department. (SUMF ¶¶ 17–18; Cullari Decl., Ex. 3). Plaintiff objects to the characterization of his request as a "reapplication" for an M.S. He believes (based on his original admission certificate) that his admission beginning in fall 2009 was for the Ph.D. program he originally applied to (or at least for some type of dual M.S.-Ph.D. program). (*See* Opp. Br. at 4–5).

What is undisputed, however, is that Mr. Keles enrolled in the fall of 2009 and went to work on obtaining an M.S. in transportation engineering. Four and a half years later, in May 2014, Mr. Keles did receive his M.S. degree from Rutgers in transportation engineering. At that point, he says, he wanted and expected to continue on with the Ph.D. program.

Mr. Keles was not permitted to proceed with the Ph.D. program. According to Rutgers, obtaining the M.S. in transportation engineering did not amount to automatic continuation in the Ph.D. program; it remained Mr. Keles's responsibility to satisfy several additional requirements. For example, Mr. Keles needed to complete a change-in-status form and obtain a Ph.D. adviser; thereafter, he would be required, under the supervision of that adviser, to pass a qualifying oral and written examination. (SUMF ¶ 29–38). Because these requirements were not met, and because, according to Rutgers, Mr. Keles was no longer affiliated with any degree or certificate program, he was not

4

permitted to enroll in additional classes. (*Id.* ¶ 37). Rutgers adds that Mr. Keles was barred from registering because there was a financial hold on his account. (*See id.* ¶ 38).[5]

Based on the foregoing, Plaintiff sued Rutgers and a number of other defendants, seeking, *inter alia,* admission to the Ph.D. program and compensatory damages. Plaintiff originally filed a 10-count *pro se* complaint in New Jersey state court. However, on February 24, 2017, the defendants removed the case to this Court. (DE 1). Shortly thereafter, the defendants moved to dismiss counts three through eight of the complaint. (DE 6). Plaintiff obtained counsel and opposed that motion. (DE 14 & 23). The Court, *per* Judge Salas, granted the defendants' motion to dismiss those counts. (DE 35 & 36). That left four claims unresolved: breach of contract (Count One); breach of the implied covenant of good faith and fair dealing (Count Two); due process violations under the New Jersey Constitution (Count Nine); and due process violations under the United States Constitution (Count Ten). (*See* Compl. ¶¶ 69–91 & 150–173).

On January 17, 2020, Rutgers—now the only remaining defendant—filed the current motion for summary judgment on the remaining claims. (DE 99). Plaintiff opposes the motion. (DE 105). For the following reasons, summary judgment is GRANTED in favor of Rutgers.

---

[5]     In his opposition brief, Plaintiff complains of an unsuccessful attempt in July 2015 to transfer to a different department (the Mechanical and Aerospace Engineering Department). (Opp. Br. at 8,11 & 13). It is not clear how the attempted transfer is relevant to Plaintiff's claims, which relate to the Ph.D. program in the CEE Department.

## II.    Legal Standard

A court shall grant summary judgment under Federal Rule of Civil Procedure 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The mere existence of an alleged disputed fact is not enough. *Id.* Rather, the opposing party must prove that there is a genuine issue of a material fact. *Id.* at 247–48.

An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is "material" if under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.*

On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party makes this threshold showing, then the burden shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. To meet its burden, the nonmoving party must

6

offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## III.   Analysis

On each of the four remaining claims, Defendant has set forth sufficient evidence to meet its initial burden. In response, Plaintiff has failed to set forth any genuine dispute as to a material fact sufficient to compel a trial.

### A.      Breach of Contract (Count One)

"New Jersey courts have recognized certain instances where a student may bring a viable breach-of-contract type claim against a public university." *McMahon v. Salmond*, 573 F. App'x 128, 132 (3d Cir. 2014) (citing *Mittra v. Univ. of Med. and Dentistry of N.J.,* 719 A.2d 693, 696–97 (N.J. Super. Ct. App. Div. 1998)). The university context is special, however, and the relationship between a student and a university is far from purely contractual. *Doe v. Princeton Univ.*, 790 F. App'x 379, 385–86 (3d Cir. 2019). The university, as an educational institution, operates under standards that do not have their origins in any bargain struck with students. A conflict over academic standards, disciplinary procedures, or policies in the student manual, then, is not purely a

7

matter of contract, and cannot be adjudicated under strict contract principles. *Id.*; *Hernandez v. Don Bosco Preparatory High*, 730 A.2d 365, 374 (N.J. Super. Ct. App. Div. 1999); *Mittra*, 719 A.2d at 697; *Napolitano v. Trustees of Princeton Univ.*, 453 A.2d 263, 272 (N.J. Super. Ct. App. Div. 1982); *see also McMahon* 573 F. App'x. at 132; *Moe v. Seton Hall Univ.*, No. 09-01424, 2010 WL 1609680, at *4-6 (D.N.J. Apr. 20, 2010). In that academic context, the scope of judicial review is confined to "a determination whether the procedures followed were in accordance with the institution's rules and regulations." *Mittra*, 719 A.2d at 697.[6] Moreover, because the judicial role in this area is limited, courts have required a plaintiff to identify a specific policy that the university breached and allege how the university breached it in a substantial way that exceeds the wide bounds of discretion afforded to universities. *Princeton*, 790 F. App'x at 386.

Plaintiff alleges that in the spring of 2009, he entered into a contract with Rutgers for his admission to the Ph.D. program, and that in 2014, after he

---

[6]     Plaintiff seems to dispute the applicability of this more deferential review, arguing that his contract claim "does not involve any academic issue whatsoever other than Defendants' egregious [c]onduct [a]gainst Plaintiff." (Opp. Br. at 16 (emphasis omitted)). Although this case does not involve exactly the type of academic dismissal dealt with in *Mittra*, the Third Circuit, albeit non-precedentially, has applied *Mittra* outside of purely academic issues. *Princeton*, 790 F. App'x at 385–86 (applying the deferential standard to various claims that a university breached policies in the student handbook). Moreover, Plaintiff does not cite any authority to suggest that this standard is inapplicable. In fact, for the proposition that "students who are disciplined may bring a . . . a contract claim," Plaintiff relies on *Hernandez*, 730 A.2d 365. (Opp. Br. at 20). *Hernandez* makes clear that "when the student requests protections from the law of contracts rather than the law of procedural due process, New Jersey courts have declined to characterize the relationship between student and university as contractual." *Id.* at 374. Plaintiff otherwise relies on case law from New York and California, which is not binding here. (Opp. Br. at 18–19).

completed his M.S. degree, Rutgers breached that contract by preventing him from continuing on with the Ph.D. program. (Compl. ¶¶ 69–77). Rutgers argues that it is entitled to summary judgment on this claim because of the deference afforded to academic decisions made by a university, and because Plaintiff has not put forth any evidence to suggest that Rutgers deviated from its own standards and practices. (Mov. Br. at 10–15).

Rutgers has put forth evidence of the standards governing its Ph.D. program. As befits an advanced degree program, as opposed to high school or college-level education, those standards require far more than conformity to a predetermined course of classroom study. Rather, they place independent, scholarly burdens on the student. A Rutgers Ph.D. candidate must have "(1) an M.S. degree in the chosen field of study, (2) a Ph.D. advisor, (3) a faculty committee and research plan, (4) a completed Change-in-Status form, and (5) [must pass] the oral and written qualifying examinations." (Mov. Br. at 14 (citing SUMF ¶¶ 6 & 28–29)). Those requirements, Rutgers explains, are set forth in the graduate student manual and online course catalogs. (*Id.* (citing SUMF ¶¶ 24–27)). "With the exception of obtaining his M.S. degree," says Rutgers, "Plaintiff satisfied none of these requirements." (*Id.*).[7]

Mr. Keles does not rebut Defendant's evidence that these were the requirements for the Ph.D. program.[8] Nor does he submit evidence that, aside

---

[7]     Issues of adherence to procedural due process standards, as opposed to degree requirements, are discussed in Section III.C, *infra.*

[8]     Mr. Keles does not argue that he was entitled to more time to meet the program requirements, and neither party discusses that issue specifically. Based on the graduate student manual, it appears that Mr. Keles would have had two semesters

from completing the M.S. degree, he fulfilled any of the other four requirements.[9] Instead, he seemingly argues that the original admission certificate he received in 2009 meant that he was already accepted into the Ph.D. program, and therefore did not need to comply with any of the program requirements to continue on after receiving the M.S. degree. (Opp. Br. at 21).[10]

Plaintiff's argument sounds in rigid contract principles—for example, that the certificate was a contractual "offer" which he could then "accept," thereby binding the university. As recognized in *Princeton* and *Mittra, supra,* this is not that kind of issue; Plaintiff's position is not analogous to that of a commercial patron who purchased a ticket and then was denied admission to an event. On the contrary, it is understood that admission to a program of advanced study is not a form of tenure; rather, the program has rigorous, ongoing requirements. By sending the certificate in January 2009, the university was not thereby dispensing with all requirements and prerequisites for Ph.D. consideration. Even the certificate itself, for example, required submission of proof of prior degrees; when it emerged that Mr. Keles did not

---

after obtaining his M.S. degree to comply, and that he failed to do so within that time frame. (*See* Cullari Decl., Ex. 4 (explaining that for "admission to Ph.D. candidacy" a student must pass a qualifying examination, and must take the examination "no later than two academic semesters after completion of his/her M.S. course requirements")).

[9]     Plaintiff argues that an adviser should have been found for him, citing to certain emails in which Rutgers faculty noted that they were trying to find him an adviser. (Opp. Br. at 6). But Plaintiff does not cite to any evidence to suggest that Rutgers was required to find an adviser for Plaintiff, or cite any policies and procedures requiring it to do so.

[10]     Here, Plaintiff argues that his breach of contract claim "is properly alleged," which is not the standard on summary judgment. (Opp. Br. at 20 & 21).

possess the correct M.S. degree (*i.e.,* one in transportation engineering), seemingly everyone agreed that it was necessary for him to obtain it if he wished to be in the program.

Given the university-student relationship and the academic nature of the decision, the Court's inquiry is limited: the issue is whether Rutgers "deviated in some significant way from its published rules and regulations" concerning the requirements of the Ph.D. program. *Mittra*, 719 A.2d at 698. Rutgers set forth its admissions and graduate program policies in a manual and course catalogs. (SUMF ¶¶ 24–27; *see* Cullari Decl., Ex. 4 at 5-8 (2009–2010 version); Pl. Aff., Ex. A at RUTGERS – 6 (2015–2016 version)). The upshot of Plaintiff's argument is that the certificate of admission signified that if he subsequently met just one of these requirements (obtaining the relevant M.S. degree), he could remain in the Ph.D. program irrespective of the others. Yet, Mr. Keles cannot genuinely dispute that other requirements existed, the university applied them, and he failed to meet them.[11] Given my "limited" role in

---

[11]     I nevertheless pause to consider in the alternative the issue as Plaintiff frames it: *i.e.,* as a matter of traditional contract law. The certificate of admission was for the spring 2009 semester, subject to certain preconditions (the documentation of prior degrees). Mr. Keles did not, however accept that offer. Rather, he asked to defer to the fall 2009 semester. Under traditional contract principles, this would be considered a counteroffer. *Berrada v. Cohen*, 792 F. App'x 158, 161–62 (3d Cir. 2019).

Regardless, Rutgers offers persuasive evidence that any contract that could have been formed by way of the January 16, 2009 admission certificate was altered through subsequent negotiations and writings. During the period of deferral from spring to fall admission, it emerged that Mr. Keles did not possess the prerequisite M.S. degree, and would need to obtain it in order to continue on to the Ph.D. program. In the fall of 2009, Plaintiff himself acknowledged his change in candidacy status from Ph.D. to what he termed "MS-Ph.D." (SUMF ¶ 15 (citing Kelly Decl., Ex. 1 at 40:15-24 & Kelly Decl. Ex. 9)). He then pursued and obtained the M.S. in transportation engineering, a course of conduct that would make no sense if he had already satisfied

reviewing his contract claim, *Princeton*, 790 F. App'x at 385, I cannot say that Rutgers breached any policy, let alone in a "substantial" and clearly identified way. *Id.* Frankly, Rutgers could have done better. If it had concerns about, *e.g.,* Mr. Keles's academic performance or his prospects for continuing on to a Ph.D., it might have raised them earlier and more clearly. I am not unsympathetic to Mr. Keles's sense of disappointment after years of academic effort (which were not fruitless, in that they did result in an advanced degree). The evidence shows, however, that Rutgers had objective requirements in place and that Mr. Keles did not meet all of them, even though he perhaps proceeded under a different subjective understanding.

On Count One, breach of contract, Rutgers is granted summary judgment.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Two)

"There is no universally-accepted test for establishing a breach of the duty of good faith and fair dealing, but two elements appear to recur with some frequency: (1) the defendant acts in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties,

---

that prerequisite for Ph.D. candidacy. (SUMF ¶¶ 17–21). It may even be assumed *arguendo* that Plaintiff interpreted various communications as acceptance into some sort of dual M.S.-Ph.D. program. Even so, Plaintiff has presented no evidence to suggest that participation in such a program relieved him of the other requirements for Ph.D. candidacy.

Alternatively, this may be analyzed as an executory contract, *i.e.,* one that required ongoing performance by the parties. Mr. Keles's required performance obviously included such acts as compliance with program guidelines, passing grades in his courses, payment of tuition, and the like. Viewed in this way, the university's actions may be seen as a response to his breach of the parties' contract.

even if that benefit was not an express provision of the contract." *Yapak, LLC v. Massachusetts Bay Ins. Co.*, No. 09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009) (citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387 (N.J. 2005)); *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126–27 (N.J. 2001)). This is not a standalone source of rights, but one tethered to a particular contract; "in the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Noye v. Hoffmann-La Roche Inc.*, 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990).

Rutgers argues that it is entitled to summary judgment on Mr. Keles's claim for breach of the implied covenant of good faith and fair dealing because there is no underlying contract and because "the record is utterly devoid of any 'bad faith' or 'malice' by Rutgers in denying Mr. Keles candidacy into the Ph.D. program." (Mov. Br. at 15). In response, Keles chiefly points to the same conduct underlying his breach of contract allegations—namely, that Rutgers "denied Plaintiff the right to enter the Ph.D. program" and "forced Plaintiff to obtain an additional M.S. degree." (Opp. Br. at 22–23).

As set forth above, Defendant is entitled to summary judgment on the breach of contract claim. And a claim for breach of the implied covenant of good faith and fair dealing requires different evidence from that underlying an ordinary breach of contract. *See Webster v. Rutgers-New Jersey Med. Sch.*, No. 15-08689, 2017 WL 3399997, at *11–12 (D.N.J. Aug. 4, 2017). Specifically, it requires that the party "acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *Black*

13

*Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000).

In general, such bad faith or dishonest conduct must have the effect of denying

the other party's reasonable expectation of receiving some benefit of the

contract to which the person was entitled. *See, e.g., Sons of Thunder v. Borden,

Inc.*, 148 N.J. 396, 690 A.2d 575 (1997).

Thus far, there is no evidence that Mr. Keles was denied anything to

which he was entitled by contract. *A fortiori,* his contractual entitlements were

not defeated as a result of some bad faith conduct by Rutgers. The evidence is

uncontradicted that Rutgers denied Ph.D. candidacy based on its application of

its institutional policies, and those policies define the scope of any entitlement

Mr. Keles may possess.

Plaintiff does not put forth any evidence that the Defendant engaged in

bad faith conduct which deprived him of the legitimately expected fruits of this

contract. "Although the non-moving party receives the benefit of all factual

inferences in the court's consideration of a motion for summary judgment, the

nonmoving party must point to some evidence in the record that creates a

genuine issue of material fact." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d

195, 201 (3d Cir. 2006). Here, Plaintiff's opposition brief contains many

characterizations, in the form of accusations of "wrongs," "misconduct,"

"fraud," and "bad faith." (*See* Opp. Br. at 9, 19 & 22). Mere accusations,

however, do not suffice. *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413,

421 (3d Cir. 2013) (explaining that a party is "obligat[ed] to set out sufficient

evidence of bad intention—*i.e.*, to demonstrate an issue of material fact—in

14

order to survive a motion for summary judgment"); *Berckeley Inv. Grp.,* 455 F.3d at 201 ("[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."). Accordingly, Defendant has shown that it is entitled to judgment as a matter of law on this claim. *See Park v. Inovio Pharm., Inc.,* No. 15-3517, 2017 WL 4316392, at *5 (D.N.J. Sept. 28, 2017) (granting summary judgment where the plaintiff offered "nothing to rebut [d]efendants' contention that [p]laintiff ha[d] no evidence to win his case on []his claim [for breach of the implied covenant]").

On Count Two, the claim of breach of the implied contract of good faith and fair dealing, Rutgers is granted summary judgment.

### C.    Procedural Due Process (Counts 9 & 10)[12]

I turn to Plaintiff's due process claims, which are grounded in both the New Jersey Constitution and the United States Constitution. Because state and federal procedural due process claims use similar standards, I analyze them together. *See Nat'l Amusements, Inc. v. Borough of Palmyra*, 843 F. Supp. 2d 538, 544 (D.N.J. 2012).

---

[12]    The complaint and Plaintiff's opposition brief make passing reference to a substantive due process claim. (*See* Compl. ¶¶ 150–173; Opp. Br. at 26). However, the crux of that claim appears to be that Rutgers failed to provided Plaintiff with a pretermination hearing—a classic procedural due process claim. Because no independent substantive due process claim is developed in the complaint or opposition brief, I do not address it. *See Manning v. Temple Univ.*, 157 F. App'x 509, 514 (3d Cir. 2005) ("This Court has strongly suggested that the right to continued graduate education is not protected by substantive due process.").

"To succeed on a Section 1983 claim for a violation of the Fourteenth Amendment's procedural protections, a plaintiff must prove: (1) that a state actor deprived her of a recognized 'liberty' or 'property' interest; and (2) that the deprivation occurred without adequate process." *Mucci v. Rutgers*, No. 08-4806, 2011 WL 831967, at *15 (D.N.J. Mar. 3, 2011). The first prong is not at issue in this motion. As to the second prong, Rutgers argues that it is entitled to summary judgment because it provided Mr. Keles with more process than was required. (Mov. Br. at 19).

"The essence of a procedural due process claim, of course, is notice and an opportunity to be heard." *Kadakia v. Rutgers*, 633 F. App'x 83, 88 (3d Cir. 2015). The Supreme Court has "frequently emphasized that "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86 (1978) (quoting *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895 (1961)).

The due process case law involving students at public universities deals with both disciplinary and academic issues.

In the context of disciplinary decisions made by public universities, due process requires "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez,* 419 U.S. 565, 581 (1975). All that is constitutionally required is "an 'informal give-and-take' between the student and the administrative body

16

dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.'" *Horowitz*, 435 U.S. at 86 (quoting *Goss*, 419 US at 584).

In the case of an academic, rather than a disciplinary, issue, "far less stringent procedural requirements" need be observed. *Id.* That is so because "the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making." *Id.* at 90; *see also Mauriello v. Univ. of Med. & Dentistry of N.J.*, 781 F.2d 46, 50 (3d Cir. 1986); *Kadakia*, 633 F. App'x at 88 (explaining that when a student is discharged for academic rather than disciplinary reasons, an informal faculty evaluation with the student satisfies due process).

At the outset, Rutgers disputes that Mr. Keles was "dismissed" from the university, whether for academic or disciplinary reasons. In the university's view, Mr. Keles earned his M.S. degree, but failed to advance to the Ph.D. program because he failed to meet requirements for that program. (Reply Br. at 10). For purposes of this motion, however, I construe the facts in the light most favorable to the Plaintiff; I will assume, without finding, that Mr. Keles was dismissed. Mr. Keles was not, of course, charged with any disciplinary infraction. I conclude, however, that Mr. Keles was provided adequate process, even under the more stringent standard applicable to disciplinary decisions, and *a fortiori* under the less stringent standard governing academic dismissals.

17

Rutgers argues that Mr. Keles was (i) put on notice of the Ph.D. candidacy requirements through graduate course program materials and communications with faculty and staff at Rutgers (Mov. Br. at 18); and (ii) given the opportunity to be heard through his numerous communications with various faculty, administrators, and ultimately the dean of the graduate school (*id.* at 19). Therefore, Defendant argues, it gave Mr. Keles "more than the mere 'informal give-and-take' that is a student's procedural due process right" under the disciplinary-dismissal cases. (*Id.*). Still more does it meet the standards for an academic dismissal, which is not subject to formal procedures and may be based on an informal faculty evaluation. *See Kadakia, supra.*

Rutgers puts forth enough evidence to meet its initial burden of demonstrating that it is entitled to summary judgment on this claim. *See Celotex*, 477 U.S. at 323.

First, the university has provided sufficient evidence that Mr. Keles was placed on prior notice of the relevant requirements for the Ph.D. program, and that he was not compliant with those requirements. There is no dispute that these were established requirements, not ad hoc or arbitrary commands. Plaintiff had access to the CEE Department's graduate program manual and course catalogs, which contained information about the requirements for Ph.D. candidacy. (SUMF ¶¶ 24–27). Specifically, Plaintiff received the graduate student manual (Kelly Decl., Ex. 1 at 33:15–34:6),[13] which referenced, *inter*

---

[13]   Plaintiff makes much of the fact that Defendant cites to the 2009–2010 graduate student manual instead of the 2015–2016 version he was shown at his deposition. (*See* Opp. Br. at 13; Pl. Aff. ¶ 4). This, he says, was a "willful act by

*alia,* the qualifying examination requirement and the adviser requirement for Ph.D. candidacy. (*See* Cullari Decl., Ex. 4 at 5–8 (2009–2010 version); Pl. Aff., Ex. A at RUTGERS – 6 (2015–2016 version)). Moreover, "Rutgers published course catalogs setting forth the various degree requirements for the Ph.D. program." (SUMF ¶ 27). Although Plaintiff denied ever viewing these catalogs, they were available to students online. (*Id.* ¶ 27 (citing Cullari Decl., Ex. 5)).[14]

Plaintiff seemingly argues that these materials contained some ambiguities as to whether an adviser was "required" or merely "desirable," and the extent to which these requirements applied to him (as someone who was allegedly already enrolled in the Ph.D. program). If there was any arguable ambiguity, it was cleared up in communications between Mr. Keles and members of the Rutgers faculty and staff. Specifically, when Mr. Keles reached out about his status in the Ph.D. program, various faculty and staff informed him that he needed to obtain an adviser and submit a change-in-status form. (SUMF ¶ 30[15] (citing Cullari Decl., Ex. 7; Kelly Decl. Ex. 4 at 26:25–27:22; Kelly

---

Defendants and a fraud upon the Court." (Pl. Aff. ¶ 4). Plaintiff does not, however, identify any meaningful difference between the two versions, and the Court has found none. Both versions reference the adviser requirement and the qualifying examination. (*Compare* Cullari Decl. Ex. 4, *with* Pl. Aff., Ex. A at RUTGERS – 6). Regardless, Plaintiff does not dispute that he received a graduate student manual containing the Ph.D. candidacy requirements prior to his dismissal.

[14]   Plaintiff "denies" that Rutgers published these catalogs. He cites "Cullari Exhibit I," which does not exist. (*See* Resp. SUMF ¶ 27). Attempting to trace the reference, I have examined Cullari Exhibit 1 (January 2009 admissions document) and Plaintiff's Exhibit I (a memo from Rutgers about discrimination and harassment). Neither, however, appears to be relevant to the catalog issue.

[15]   Mr. Keles cites to Plaintiff Exhibits F and K. These exhibits, at best, indicate Plaintiff's disagreement with the adviser requirement. They do not rebut the evidence that he was informed that he needed an adviser.

Decl., Ex. 5 at 27:15–28:8; Kelly Decl. Ex. 12)). The evidence is clear that Mr. Keles, even if he disagreed with the requirements, was on notice of them prior to termination.

Second, Defendant's evidence shows that Plaintiff was given an opportunity to be heard prior to his dismissal through his numerous communications with various faculty and staff, including the dean of the graduate school. (SUMF ¶¶ 44–48). He was told, on numerous occasions, that he was not eligible for Ph.D. candidacy unless and until he found an adviser and complied with the other requirements of the program. (*See* SUMF ¶¶ 14–15 & 30 (citing Cullari Decl., Ex. 7; Kelly Decl. Ex. 4 at 26:25–27:22; Kelly Decl. Ex. 5 at 27:15–28:8; Kelly Decl. Ex. 9; Kelly Decl. Ex. 12)). Plaintiff does not dispute that he failed to do so. Thus, Defendant has shown that Mr. Keles was given notice and the opportunity to be heard prior to his dismissal from the Ph.D. program. *See Kadakia*, 633 F. App'x at 88 (affirming grant of summary judgment on a procedural due process claim where the student did not dispute that "he received repeated written notices of his academic failures and consistently availed himself of his right to be heard and remediate the issue").

Based on the foregoing, Rutgers has met its initial burden of showing that it is entitled to summary judgment on this claim, and the burden shifts to Plaintiff to demonstrate that some issue of material fact exists. Plaintiff's opposition falls far short of meeting that burden.[16]

---

[16]     Several portions of Plaintiff's brief which purport to address the due process claims do not actually do so. For example, he discusses the statute of limitations and New York law, neither of which is relevant. (Opp. Br. At 17). Similarly off-point are

As set forth above, Plaintiff does not actually dispute that he was put on notice of, and had multiple communications with Rutgers about, the Ph.D. requirements. In his opposition papers, Plaintiff argues that Rutgers violated his procedural due process rights by (i) failing to follow "its own University Senate hearing rights," and (ii) dismissing Plaintiff's request "for a hearing to investigate by Rutgers its published due procedures by the University Standing Committee for Hearing Procedure." (Opp. Br. At 26). Plaintiff points to no record evidence for either argument, relying solely on a citation to his own complaint. (*Id.*). That is insufficient. *See Ridgewood Bd. of Educ.*, 172 F.3d at 252 (explaining that the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment); *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("unsupported allegations . . . and pleadings are insufficient to repel summary judgment"). More fundamentally, Mr. Keles refers to additional procedures he wanted, but fails to explain why those procedures were required, or why the process he did receive deprived him of the "informal give-and-take" that due process requires.

Accordingly, I find that, prior to termination, Mr. Keles was provided adequate due process: He was on notice of what was required to proceed with his Ph.D. and was given the opportunity to be heard through the give-and-take he had with various faculty and staff at Rutgers. *See McMahon v. Rutgers*, No.

---

Plaintiff's arguments under the due process header on page 23, which argue that a claim of fraud is adequately alleged and timely. (Opp. Br. at 23–26).

11-02306, 2013 WL 5937416, at *9 (D.N.J. Nov. 4, 2013) (granting summary judgment on procedural due process claim where student was given an opportunity to appeal his grades and present his case to the dean for review), *aff'd*, 573 F. App'x 128 (3d Cir. 2014); *Manning v. Temple Univ.*, 157 F. App'x 509, 515 (3d Cir. 2005) (affirming grant of summary judgment on procedural due process claim).

On Counts Nine and Ten, denial of procedural due process under the state and federal Constitutions, Rutgers is granted summary judgment.

## IV.   Conclusion

For the foregoing reasons, Defendant is entitled to summary judgment on all of Plaintiff's remaining claims (Counts One, Two, Nine and Ten). An appropriate Order accompanies this Opinion.

Dated: February 16, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty, U.S.D.J.**

22